Welcome counsel and good morning. We have six cases on our docket today and we plan to take three of them and then here have maybe a 10-minute break or so and here are our other three. I should have introduced myself. I'm Judge Moritz and I'm sitting today by Zoom with Judge Paul Kelly. Two senior judges I'm pleased to sit with. Judge Paul Kelly in New Mexico and Judge Mary Briscoe who's also here in Kansas via Zoom. So we'll proceed if counsel's prepared for the first case. It's 21-1001 Mares v. Colorado Coalition for the Homeless. Good morning. May it please the court. My name is Ralph Lamar. I represent Lisa Maris against Colorado Coalition for the Homeless. There are two issues that the court needs to consider in this appeal. She has brought a claim for interference with her FMLA rights. The first issue in which the lower court held that Ms. Maris had not provided sufficient notice of a need for leave. The factual record belies that holding. Specifically, Ms. Maris had been conversing with her supervisor, Heather Beck, for a number of weeks about the results from the domestic violence she was experiencing. On November 7th and November 8th, Ms. Maris told Ms. Beck in texts that she wouldn't be in until November 13th. Well does all of that request FMLA leave? I mean that's just normal conversation between employer and employee. No it's not, Your Honor, and I'll explain why. The reason all of the texts were included is that Ms. Beck once said to Ms. Maris during the whole course of this time when Ms. Maris was suffering from the PTSD, by the way you need to tell me each time you're out that it's for an FMLA related reason or that it's the PTSD. It was understood. It was clearly understood. Ms. Maris would say I'm being beaten up. Counsel just to get clear here on chronology. The absence that I think resulted in her termination started what November 9, November 10, is that right? What CCH has claimed was the absences that weren't approved were from November 10 through her termination. And these conversations that you're talking about all precede that? Nope, some preceded and some were afterwards. So to give Your Honor the five-week period where they didn't talk. But for the most part they talked all the time on texting and it was very clear that Ms. Maris was suffering from domestic violence, emotional distress issues. And while the PTSD was not specifically stated in any of the texts, Ms. Beck was the one who initially suggested to Ms. Maris on the 24th of October, you need to apply for FMLA leave. And that process was started. Ms. Maris then was given the forms and told on the 25th, you need to submit these to your doctor and we need to see the forms, completed forms by November 9, which she did. She was released by the doctor to return to work on October 26 and didn't return. Well, Your Honor, I can explain that. Well, you better. Well, there's often a presumption, Your Honor, that doctors know what they're doing. This doctor didn't and it's important for the court to understand. She's a therapist, wasn't she? She was. Well, she's a While the form can be read as saying that Ms. Maris was returned to work on the 26th, it's very important for the court to understand what was done and what wasn't done. Ms. Maris was not shown the completed form by her doctor before it went to... Well, she never went back. She never went back. I understand she didn't go back, Your Honor, but her own doctor did not provide her with a copy of the form. That's not the employer's responsibility. Well, it is if the employer has questions about it, Your Honor, and on November 10th, at the end of the business day, Robin Cottrell, who has a master's in organizational development, sent Ms. Maris an email that said, based on the certification, your FMLA covered you through Thursday, November 9, 2017. So she approved all of it. From Ms. Maris' perspective, there was no dispute that that prior time had all been approved. Now, Ms. Maris... What about after the 9th? Well, Ms. Maris, on the 10th, had, I believe, one text with Ms. Beck, but because Ms. Maris had not been told by her physician that she was releasing her to return that day, and because Ms. Maris felt terrible... That takes me right back to, she's not told by her physician, isn't really relevant to the employer's liability here. Well, Your Honor... What was the employer's actions after the 10th? From the 10th on, Your Honor, if there is a question about what the current state of the employee's health condition is, the employer has a duty to either communicate with the doctor to get clarification, or to say to the employee, you have to go get a recertification. We have some questions about when this certification ended, and since we have questions about that, you need to go get a recertification. And in fact... And where do we get support for those concepts, putting those duties on the employer? Well, Your Honor, one of the duties is set forth in 29 CFR section 825.300C, where an employer, on a medical recertification request, has to set forth the specific obligations and a consequence of a failure to meet those obligations. Is this a recertification request situation? It is, Your Honor, and in fact... This is a situation, isn't it, where the FMLA leave had ended, right? But according to the employer's reading of the form, I agree that they could say it had ended. Well, and they even told her that. It had also been approved for intermittent leave, Your Honor, and there's evidence in the record that PTSD isn't something like a bad back, where you have a pretty good idea when you're going to return to work. There are triggers with PTSD, and Ms. Morris already knew by the middle of the week, on the 7th and the 8th, that she wasn't going to be able to go back to work until Monday the 13th. She told Ms. Beck that on the 7th and the 8th. But the point is that she was told that her FMLA leave was expiring on the 9th. She was aware of that. She thought she had a continuing condition. Her FMLA leave expired on the 9th. She may have continued to recertify, but the point is she still had to comply, once that FMLA leave, she still has to comply with the company's notification of absences. She still has to give them notice that she's going to be taking leave, and she failed to do that. That's not true, Your Honor. It's simply not true. Tell me why it's not. Because the factual record shows that Ms. Morris told her that she would not be in until the 13th. Ms. Morris did not know that the certification only went through the 9th. Again... Your Honor, when there are issues... She had an email saying that her FMLA leave was going through the 9th, right? That was sent to her, Your Honor, on the 10th at 4 27 p.m. Okay. So it was given to her at the end of the day when CCH claimed that she should have been back to work already, instead of on the 9th. Well, what about her attendance of work after that, once she had that notice, right? She had 15 days, and that's the recertification regulation that the lower court did not even address. But the recertification is an entirely different issue than the need once the FMLA leave expired, and she's aware of that. She's got to give notice of her absence. She's no longer under FMLA leave. Your Honor? She doesn't have the recertification yet, and that's our case in twigs. That's our case in bones. I disagree. You've got to comply with the policy requiring notice, regardless of whether you plan to recertify. She told her employer... Your Honor? Tell me about twigs and bones. Why don't they apply? Neither one applies because the employee in twig, I believe, just disappeared. Stopped communicating with the employer. Ms. Morris never... After the 17th, or excuse me, after the 10th, she never contacted anybody at the shop. Your Honor, on the 16th... She kept saying she had come back. I'm returning to work, and she wouldn't show up. Your Honor, on the 16th, she was told, you're on administrative leave, and there's no evidence in the record whatsoever from CCH that says, this is why we've decided to change it to administrative leave, and Ms. Beck, who's the one who placed Ms. Morris on the administrative leave, didn't say to her, by the way, you need to continue to report in daily. Given the prior experience between the two women, and what happened from the 16th on, a reasonable jury could find that even though Ms. Morris doesn't remember the conversation at the time of her deposition, that in November of 2019, what happened was that she had been told, you're on administrative leave, and so now she doesn't believe that she's approved for FMLA leave anymore, so from her perspective, the medical status has become irrelevant. A reasonable jury could find that, Your Honor, and with regard to this recertification process, when an intermittent leave is contemplated, and it was in the original certification, the employer, when facts or circumstances change, have a right to ask for a recertification, and they had the right to ask for that, but they had to give Ms. Morris 15 days notice so that she could go to her employer. Again, does recertification fit here? Isn't recertification a situation when the employee is on FMLA leave, and during that period of time, that's when the issue of recertification arises? No, Your Honor. Their FMLA leave had been completed. There's nothing to indicate in the regs or the statutes that it has to be before the prior leave has completed. In fact, Killian versus Yorozu, that I cited in my briefs, clearly discusses this from the Sixth Circuit, and that when an employer says, we need a new certification to cover this extension of this time, whether it's a discrete new one or whether it was something that was contemplated before the first one ended, the point is that it's going to go beyond the end of the first certification. In that case, the employer, Yorozu, fired the plaintiff before the plaintiff had been given the full 15 days to provide the recertification, and the court said it's a violation of the law. There's a reason for that regulation, Your Honor. In this case, the employer basically has tried to shortcut the process by saying, well, even though we knew she was ill, we have a requirement that she call in. Well, she had been calling in, but they didn't give her the 15 days, and they never showed her the form, and they never said to her, we're confused. Under our reading of this, you should have been back to work by October 26th. And of course, what Ms. Morris did have was the email saying it's been approved through November 9th. So given what happened from Ms. Morris' perspective, all CCH had to do was to say, look, here's the form that we received. We're confused about it. It appears to us as if your leave ended on the 9th. We're going to give you 15 days to get a new certification for any other time beyond the 9th. That's all they would have had to do, but they didn't do that. And in fact, the way they fired her suggests that they just didn't want to address or deal with the fact that she was suffering from PTSD. And I see my time's almost up, so I'd like to reserve my remaining time for rebuttal. Thank you. Ms. Pebble. Good morning. May it please the court. The Colorado Coalition for the Homeless terminated Ms. Morris' employment for violation of the organization's attendance policy. Could you stop a second? We're getting a lot of strange feedback on the audio. Is Kevin around? I think now that Mr. Lamar has muted his, is that helping? Not much. I just muted Mr. Lamar, so let's see if that helps. Is this any better? Yeah, I think so. Okay, please let me know if I need to pause. It sounded like you were underwater. That would not help today. The Colorado Coalition terminated Ms. Morris' employment because she violated the company's attendance policy. The FMLA was not triggered here, and I'll tell you why. It's undisputed that Ms. Morris was released by her doctor to return to work on November 9th. That's contained in the certification, as you noted earlier. The certification also indicated that she was on a continuous leave from October 1st through 26th, and that she would need the potential for intermittent leave from November 9th, 2017, for the next year. Is this intermittent leave? This is a very confused record about what kind of leave she had, if it was just a gift, or what was happening in October. Was all of that FMLA leave? Yes. Her psychiatrist certified, and the Coalition approved her entire absence from October 1st through October 26th as FMLA leave. Well, but then they also said your FMLA leave ends on November 9th. Yes, that's true. They gave her then from October 1st to November 9th. Is that correct? Yes, that's correct. And the reason for that was because she had not seen her doctor until November 9th, and the Coalition didn't receive the certification until then. And so the Coalition was being generous and allowed her, designated that time as an accommodation as additional leave. Not as FMLA leave? As FMLA leave, yes. All right. However, the certification, undisputedly, and there's no confusion about it, indicated she could return to work on the 9th. The Coalition designated that leave and sent Ms. Maras an email telling her they expected her to return to work on November 10th. Ms. Maras spoke with her supervisor, Ms. Beck, and notified her that she would be in the following Monday, November 13th. However, she did not explain to Ms. Beck why she was going to be out and why she wouldn't be returning until the 13th. That following week, Ms. Maras failed to report on the 13th. Ms. Beck reached out to her, asked her where she was, and Ms. Maras said, I will be in the next day. That continued throughout the week. Ms. Maras, at no time, indicated to Ms. Beck why she continued to be out on leave. The Colorado Coalition for the Homelessness Attendance Policy requires that employees give advance notice when possible that they're going to be absent from work, and it also requires that the employees provide some explanation for their absence. That's where Ms. Maras really fell down here. She failed to notify the Coalition why she wasn't returning to work or provide any reason for her continued absence. The Coalition was left to guess is she still have FMLA leave? Is she having some other personal issues going on? Does she just want additional time off? Well, why would they think she's on FMLA leave? That's my point, Your Honor, is that she has an obligation under the FMLA, under TWIG, under Bones, under DRY, under the Colorado Coalition of the Homelessness Policy to notify the employer the reason for her absence. She didn't even have to say, I need leave under the FMLA, but she did need to provide some explanation for that leave and for her failure to return to work. That would have either caused an excused absence under the attendance policy or would have triggered this requirement to look at intermittent leave under the FMLA if the reason for her absence from work fell under the certification from her psychiatrist. The issue was she failed to share that information with the Coalition, left the Coalition in the dark about why she hadn't returned to work, and the Coalition had no ability to gauge why she wasn't there, could not approve her continued absence, and she was terminated for violation of the attendance policy. Plaintiff here relies on the conversations between the employer and the employee, essentially, I guess, relying on what we could call lulling in that it seemed to be all right to continue to have these conversations, and she thought that they understood what her condition was, particularly when one of these individuals went to her home and saw the situation there and saw her, there was just the assumption on her part that the employer understood that she needed leave. So a couple items on that, Your Honor. First, the text messages clearly show, and those are in the record at 129 through 131, clearly show that Ms. Maras never provided an explanation or a reason for her continued absence. Ms. Beck even went so far as explaining to Ms. Maras that her continued absence and failure to return to work was not in line with FMLA certification and that she needed to provide some explanation for the continued absence. Ms. Maras acknowledged that, yet never shared information with Ms. Beck or the Coalition to excuse that continued failure to return to work. In addition, there is the appellant attempts to make a factual dispute about whether the Coalition knew that Ms. Maras suffered from PTSD. The facts are undisputed that the Coalition did not know that she suffered from PTSD, but it doesn't matter. It's immaterial. Even if the Coalition did know that she suffered from PTSD, the Coalition had approved intermittent FMLA for the next year. However, that required Ms. Maras to at least notify the Coalition of her reason for absence. To follow the appellant's belief, they are completely relieved of any obligation to communicate with their employer to explain their reasons for absence. That does not align with very established case law in the Tenth Circuit and nationwide. Tell me again, she was approved for intermittent leave? FMLA leave? Yes, Your Honor. In accordance with the certification from her psychiatrist, which indicated she could have episodic flare-ups for up to 10 days, four to six times over the following year. I think, so what you're saying is when you have an intermittent leave approval, the employee still has to let you know when they need that intermittent leave for FMLA purposes, regardless of whether it's PTSD or whatever the approval has been for, because they could be taking leave for some other reason, certainly. They've had a family emergency. They're sick for another reason. They've got the flu. They have to notify when they're taking that leave that it's pursuing the FMLA. Otherwise, the employer doesn't know. Is that what you're saying? Yes, exactly, Your Honor. They might speculate, but they don't know. Exactly, and that's what the district court noted in his opinion, that the organization cannot guess. Again, the burden on Ms. Maras was not significant. She just needed to let them know the reason for the leave, but without giving some indication of the reason, the employer is left to guess, and that is not the intention of the FMLA. It would lead, quite honestly, to widespread FMLA abuse, if that's the way the FMLA was interpreted. You said there was a text where Ms. Beck explained the need, that she told her that she needed an explanation, she has to give an explanation or a reason, and that the plaintiff acknowledged that she needed to do so. What day was that? Yes, Your Honor. That was on November 15th, and it's in the record at 1-28 through 1-31. I would like to address a couple of other issues that appellant raised. He talked about this Killian case out of the Sixth Circuit, and it is clearly distinguishable from the facts at issue here. In that case, the employee actually explained the reason for the leave and the extended absence, and indicated she was getting a certification. The certification issue is something that does not create any dispute of material fact here. First off, Ms. Maras had not been asked to get a recertification. A recertification is appropriate when there's been a change in circumstances, the employer has a reason to doubt the employee's need for leave, or there's been some other issue that has arisen. That was not the case here. Although Ms. Beck repeatedly asked for an explanation for Ms. Maras' failure to return to work, she had not moved into an FMLA recertification because she never provided any information to the employer. Ms. Beck certainly asked for an explanation for her continued absence, but Ms. Maras never- In this recertification, who starts the request? Who says either FMLA information is needed, or I need to be extended on FMLA leave? Who has the burden to start the conversation? The burden is on the employee to provide the employer with some information to know that the employee needs to be out for some reason that may qualify for FMLA leave. At that point, the burden would switch to the employer to say, we need a recertification because what you're requesting does not align with what your doctor certified. However, that is not what happened here. We never got to that point because she never returned. Again, her doctor released her on November 9th. She should have returned the next day or certainly the following week, and she didn't do so. In addition, even if she had been going down the recertification route, which wasn't what happened here, it still wouldn't matter. It wouldn't create an issue in this case because Ms. Maras still would have been terminated for violating the organization's attendance policy. She failed to notify the coalition for her reason for continued absence. Whether she was getting a recertification or not does not change the fact that she violated the That seems a little counterintuitive. I mean, if she's in the middle of seeking what you're calling recertification and the employer is aware of that, why does she need to say, by the way, I won't be in? Exactly. The issue is that she never notified, A, that she was seeking recertification or the reason for her leave. In fact, it's undisputed. Ms. Maras testified that she never sought a recertification. She never reached out to her provider after seeing the provider on November 9th. There was no indication, again, in the record that she was even attempting to seek a recertification. But my point is, even if she was, it doesn't excuse her for complying with her employer's policies, which require her to explain some absence, which is what she failed to do here. So, if I'm understanding correctly, you're saying if she would have simply said, instead of saying, I'm coming back in each day, which is apparently what she said, I'll be back tomorrow, I'll be back tomorrow. If she would have said, I'm still having a problem and I'm going to seek recertification, I need the intermittent FMLA leave, it would have been enough. She wouldn't have had to actually have the recertification processed. She has the time then to do that. Exactly, Your Honor. Because the coalition had approved this idea of intermittent leave for flare-ups. So, if she had simply said, I'm having a flare-up, I'm experiencing some type of any information with the coalition, it would have triggered the FMLA and she wouldn't have needed to get recertification because it would have fallen in line with the intermittent leave that the coalition had already approved. The issue was, and it's undisputed, the record is clear, she admits it, she never indicated to the coalition or to Ms. Beck that she needed additional time off. Just that she would be in the next day repeatedly, I'll be in tomorrow, I'll be in actually, that happened in the Twigg case. In Twigg, the employee was released to return to work on April 1st. She didn't show up on the 2nd, the 3rd, or the 4th, and the employer terminated her employment. The court upheld that termination despite the fact that the employee there also had been approved for intermittent leave because the employee failed to notify the employer of the reason for the continued leave and violated the policies. It is almost a carbon copy of what we're seeing. You say that on the 15th is when she acknowledged that she understood she needed to give a reason, but what day was she terminated, her employment terminated? She was not terminated until November 26th. She was placed on an administrative leave on November 16th. Okay, so the day before is when we have her acknowledging that she understands that she doesn't matter that prior to that date, perhaps she didn't understand. This is confusing. Let's face it, this is confusing, confusing stuff. Well, it doesn't matter because again, the employer sent her a designation, explained that she was expected to return on November 10th. She acknowledged that. And this is email, this is the November 9th email, when is it? The 9th or the 10th? It was the 10th, November 10th email. And she received the designation notice, which says we expect you to return on November 10th. And so there could be no confusion there. There's no question. If she was confused, what communications she may have had with her doctor, again, that's not the employer's burden to explain to the employee that the company met its burden by providing the designation and the notice that it expected her to return to work. Thank you, counsel. Thank you. Mr. Lamour? You need to unmute, please. Sorry, Your Honor. Yes, the facts on plaintiff's brief pages 24 and 25 and the statement of facts from fact number 93 through 102 clearly shows that Ms. Beck understood that Ms. Morris was absent due to her psychological issues. In fact, one of the things Ms. Beck says at fact number 95, oh, I thought FMLA ended Thursday. I hope you are feeling better. So it's understood by Ms. Beck that the reason Ms. Morris is out is because she isn't feeling well. But it continues on fact number 99 on the 14th. Ms. Beck leaves Ms. Morris a voicemail that says, please get a doctor's note for your absences from the 10th through the current date. So Ms. Beck is going from the that it had purportedly ended on the 9th. But she also understands that Ms. Morris hasn't been into work. So she's assuming that Ms. Morris is out due to her FMLA reasons. And fact 102 at the top of page 26, this is the most important one where Ms. Morris says, Heather, I'll be in tomorrow. And Ms. Beck responds, I'm glad to hear that, smiley emoji. Please still do have your docs submit the extension for FMLA through today. So it's understood that she was missing due to this condition she'd been having and defendant's contention that somehow Ms. Morris needed to start saying FMLA. I'm out for FMLA. I'm out for FMLA. Your time has expired. Judge Kelly, did you have a question? All right. Thank you. All right. Counsel, we appreciate your arguments today. The case will be submitted and counsel are excused.